IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                No. 09 CR 0672 MV

AGAPITO FRANCO-LOPEZ,

  Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Suppress Involuntary Statements filed June 29, 2009 [Doc. 55]. The Court conducted a hearing on the motion on October 14, 2009. After considering the motion, response, additional briefing, relevant law, evidence and arguments, and being otherwise fully advised of the premises, the Court finds the motion should be **DENIED** for the reasons stated herein.

## STATEMENT OF THE ISSUE

Defendant moves to suppress statements he made to United States Border Patrol ("Border Patrol") and Immigration and Customs Enforcement ("ICE") agents during two interrogation sessions following his arrest on November 23, 2008. In his Motion to Suppress, Defendant argues that his post-arrest interrogation violated both the Fifth Amendment's privilege against self-incrimination and his Sixth Amendment right to counsel. In his subsequent Memorandum in support of his Motion [Doc. 80], Defendant prays for the Court to grant his Motion to Suppress "because Defendant's statements were made in violation of the Sixth Amendment." Doc. 80, p. 4. As Defendant has not expressly withdrawn his Fifth Amendment claims – indeed, much of the arguments he makes and the case law he cites in his Memorandum rest on Fifth Amendment

analysis – the Court evaluates them below.  The Court finds no grounds to suppress Defendant's statements under either the Fifth or Sixth Amendments.

## FACTUAL BACKGROUND

On November 23, 2008 ICE agents apprehended Defendant and his co-defendant Benito Hernandez when they attempted to pick up a group of undocumented immigrants in Mr. Hernandez's van.  Defendant underwent two interrogations following his arrest, first with Border Patrol agents Kurt Blum and Rene Valenzuela, and then with ICE agents Alberto Chavez and Daniel Carroll.  During both interrogation sessions, Defendant made various incriminating statements regarding his participation in an immigrant smuggling scheme.  He has been charged with Conspiracy to Transport Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and Transporting Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

At the suppression hearing, Agent Blum testified that he and Agent Valenzuela administered *Miranda* warnings[1] to Defendant before they commenced the interrogation.  The agents presented Defendant with Border Patrol's standard *Miranda* waiver form ("I-214") in Spanish, which Defendant read and stated that he understood.  The form includes a Spanish translation of a statement of rights pursuant to the procedural safeguards required under *Miranda v. Arizona*, 384 U.S. 436 (1966), and a signature line in which the subject of the interrogation may indicate that he understands his rights but still wishes to waive them.  Agent Blum testified that Defendant signed the waiver, but the form was later misplaced.

---

[1]*See Miranda v. Arizona*, 384 U.S. 436, 467-74 (1966) (instituting requirement that prior to custodial interrogation, suspect must be informed he has the right to remain silent, any statement he makes may be used as evidence against him, he has the right to the presence of an attorney, and he has the right to appointed counsel if he cannot afford to retain counsel).

Defendant did not testify at the suppression hearing. In his Motion, he does not deny signing the I-214 waiver, but he asserts that the government has produced "no evidence that the procedural safeguards set forth in *Miranda* were followed." Doc. 55, p. 3. At the suppression hearing, defense counsel questioned Agent Blum extensively about the missing I-214 waiver, and Agent Blum admitted that the loss of the form was very unusual. However, on redirect examination, Agent Blum reaffirmed his testimony that Defendant was advised of his *Miranda* rights and he signed the I-214 form prior to the commencement of custodial interrogation.

According to the government, following Defendant's execution of the waiver, the Border Patrol agents interrogated him in Spanish in a well-lighted interview room. Agent Blum testified that the interview room contained a large window made of two-way glass. He testified that during the interrogation, he and Agent Valenzuela maintained a conversational tone and never used their firearms, although Agent Valenzuela's firearm was visible. Agent Blum further testified that neither he nor Agent Valenzuela threatened Defendant, physically touched Defendant, or employed any form of trickery or coercion. The interogation lasted approximately one hour. According to Agent Blum, Defendant was alert and did not appear confused. At no point did Defendant ask to take a break, cease the interrogation or speak to an attorney.

Agent Blum testified that the Border Patrol interrogation began at around 12:00 p.m. on November 23, 2008. He stated that a government record of Defendant's immigration file was retrieved the same day at 2:14 p.m. from the Department of Homeland Security's Central Index System ("CIS")[2], but he had not seen the CIS record when he interviewed Defendant. The

---

[2] CIS is a database containing records for individuals who have had prior contact with a federal immigration agency such as Citizenship and Immigration Services or ICE.

immigration record lists Defendant's counsel in the present case, Felipe Millan, as his "Case Attorney." Def. Ex. 2.

After Border Patrol interrogated Defendant, ICE agents Alberto Chavez and Dan Carroll questioned him in the same interrogation room. Agent Chavez testified that prior to the interrogation, he asked Defendant in Spanish if he was willing to speak to the agents. Defendant replied that he was willing to give an interview. Agent Chavez then gave Defendant a written version of the *Miranda* warnings in Spanish and read Defendant the warnings so that Defendant could read along. Agent Chavez informed Defendant that he had the right to request an attorney at any time during the interrogation.

At the suppression hearing, the government introduced ICE's *Miranda* form into evidence, as well as the English translation. Gov't Exs. 1 & 2. The top section of the form is titled "Statement of Rights," and it recites the *Miranda* warnings. The bottom section, titled "Waiver," reads: "I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." Gov't Ex. 2. Defendant signed the Spanish version of the *Miranda* waiver and dated it November 23, 2008 at 5:22 p.m. Gov't Ex. 1.

Agent Chavez testified that prior to the ICE interrogation, he asked Defendant if he was hungry or thirsty, to which Defendant replied that he was fine. Although Defendant stated that he had smoked marijuana earlier in the day, Agent Chavez observed him to be sober and lucid during the interrogation session.[3]

---

[3]Although no testimony was offered as to the exact time that Defendant smoked marijuana that morning, Agent Blum testified that it was around 9:00 a.m. when he received a radio report that Defendant had been apprehended for the instant alleged offense. Therefore, the

Agent Chavez testified that he was armed during the interrogation, but his firearm was concealed under his shirt. He testified that he believed that Defendant would have been unable to see that he was armed. It is uncontroverted that Agents Chavez and Carroll did not draw their firearms or otherwise use them during the interrogation. Agent Chavez testified that he did not know if Defendant had eaten or drunk water, but he had asked both co-defendants if they were thirsty and if they had been fed prior to Agent Chavez's arrival at the Border Patrol station. According to Agent Chavez, Defendant said he was fine. He further testified that it is standard practice to offer suspects food and water or juice while they are detained at the Border Patrol station, and he observed one of the immigrants who Defendant allegedly smuggled still eating lunch when the interrogation session with Defendant began.

Agent Chavez testified that he did not see the CIS record of Defendant (listing Felipe Millan, as Defendant's "Case Attorney") until one or two weeks after the interrogation. He confirmed Agent Blum's testimony that the form indicates that Defendant had an attorney at some point prior to his arrest for the alleged alien smuggling offense. Specifically, Agent Chavez stated that the CIS form indicates that at some point Defendant applied for immigration benefits, and was represented by Mr. Millan in connection with that application.

## ANALYSIS

**I.    Defendant's Fifth Amendment Claims**

The waiver of one's Fifth Amendment privilege against self-incrimination must be knowing, voluntary and intelligent. *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir.

---

Border Patrol interrogation began at least three hours after Defendant's arrest, which means that more than three hours had passed since Defendant smoked marijuana. Defendant does not allege that he was intoxicated during either interrogation session.

2008). This standard requires that a suspect's relinquishment of the privilege be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Curtis*, 344 F.3d 1057, 1066 (10th Cir. 2003) (internal citations and quotations omitted). Moreover, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*.

The Court must determine the voluntariness of a *Miranda* waiver "based upon the totality of the circumstances, considering 'both the characteristics of the accused and the details of the interrogation.'" *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006) (quoting *United States v. Toles*, 297 F.3d 959, 965-66 (10th Cir. 2002)). "No single factor is determinative." *United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir. 1999). The Government bears the burden of showing by a preponderance of the evidence that a confession is voluntary. *Lopez*, 437 F.3d at 1063 (citing *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004)).

In his Motion to Suppress, Defendant argues that his statements should be suppressed because they were made during custodial interrogation and they were involuntary. The government does not dispute the fact that Defendant made his statements during custodial interrogation. Rather, the government argues that Defendant read and understood his *Miranda* rights prior to each interrogation session, and he knowingly, voluntarily and intelligently waived those rights.

Neither party disputes the fact that Defendant signed a waiver of his rights prior to the second interrogation with ICE Agents Chavez and Carroll. However, the Court must determine whether or not Defendant was adequately informed of his *Miranda* rights prior to the initial interrogation with Border Patrol, and, if so, whether or not he effectively waived those rights.

The Court must also determine if Defendant's waiver of his rights prior to his interrogation by ICE was knowing, voluntary and intelligent. If Border Patrol Agents Blum and Valenzuela intentionally disregarded *Miranda's* procedural safeguards prior to commencing the first interrogation with the purpose of eliciting a confession, this would undermine the government's argument that Defendant's waiver of rights prior to the second interrogation session was knowing, voluntary or intelligent. *See Missouri v. Seibert*, 542 U.S. 600, 613 (2004) ("[I]f the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, . . . a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again.").

### A.     Waiver of *Miranda* Rights Prior to the Border Patrol Interrogation

"'Only if the totality of the circumstances surrounding the interrogation reveal [sic] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'" *Smith v. Mullin*, 379 F.3d 919, 932-33 (10th Cir. 2004) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In order to validly execute a waiver, a defendant must possess "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)).

Defendant argues that the government cannot prove that Agents Blum and Valenzuela issued *Miranda* warnings prior to interrogating him. Defendant states that Agent Blum's uncontradicted testimony amounts to insufficient evidence that the warnings were given because this testimony consisted of "self-serving statements." Doc. 80, p. 2.

The Court finds Agent Blum to be a credible witness. Defendant has put forth no

evidence contradicting Agent Blum's testimony that he and Agent Valenzuela administered *Miranda* warnings, that Defendant read a statement of rights that he indicated he understood, and that Defendant signed a waiver of his *Miranda* rights. Rather, Defendant's entire argument rests on the fact that either Border Patrol or ICE subsequently lost Defendant's waiver form. Defendant does not claim that he did not sign the *Miranda* waiver form, nor does he provide his own version of the facts surrounding the interrogation. While the Court finds it troubling that a law enforcement agency lost a piece of evidence as vital as a signed *Miranda* waiver, this fact does not mean that Defendant did not waive his rights. The Court heard testimony from Agent Blum that he and Agent Valenzuela first orally administered *Miranda* warnings to Defendant in Spanish, and then provided Defendant with a Spanish waiver of rights form which he carefully read and signed. Finding Agent Blum's testimony to be consistent and credible, the Court finds that the government has provided sufficient proof that Defendant did in fact sign the *Miranda* waiver.

The Court must still assess the "totality of the circumstances surrounding the interrogation," *Smith*, 379 F.3d at 932-33, to determine if Defendant's waiver was knowing, voluntary and intelligent. The voluntariness of a *Miranda* waiver depends on "the absence of police overreaching." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). A *Miranda* waiver is knowing and intelligent if the defendant possessed "the requisite level of comprehension" and "evidenced sufficient awareness and understanding" of the rights he was relinquishing. *United States v. Burson*, 531 F.3d 1254, 1257 (10th Cir. 2008) (internal quotation omitted).

Defendant argues that he was represented by counsel at the time of the interrogation, which he concludes renders his waiver involuntary. Defendant has cited no case law that

supports this proposition.  As a preliminary matter, the Court notes that the representation documented in the CIS record, which Defendant implies related to the instant alleged offense, was in fact representation in a prior immigration matter.  *See* Def. Ex. 2 (describing Defendant as "Applicant," listing his Alien Number, and summarizing the document's contents as "EOIR [Executive Office for Immigration Review] Data").  Moreover, even if he were represented by counsel with respect to the immigrant smuggling charges, this would not preclude a finding that he validly waived his *Miranda* rights.  *See Montejo v. Louisiana*, 129 S. Ct. 2079, 2090-91 (2009) (holding that after a defendant has been indicted and appointed counsel, he can still waive both his right to have counsel present during interrogation and his privilege against self-incrimination).  Therefore, the proper inquiry is 1) whether the circumstances surrounding the interrogation evidence coercive law enforcement conduct that would render Defendant's waiver of his *Miranda* rights involuntary, and 2) whether these circumstances demonstrate Defendant's inability to knowingly and intelligently waive his rights.

     Defendant has not alleged that either Agent Blum or Agent Valenzuela coerced or threatened him into waiving his *Miranda* rights.  Agent Blum testified that neither he nor Agent Valenzuela promised Defendant anything in exchange for signing the waiver.  The Court finds no facts in the record to suggest that Defendant's waiver was the product of police overreaching.  Moreover, Defendant has not alleged that his awareness or understanding of the rights he was waiving were insufficient to find that his waiver was knowing and intelligent.  After considering all these facts, the Court concludes that Defendant knowingly, voluntarily and intelligently waived his *Miranda* rights.

### B. Waiver of *Miranda* Rights Prior to ICE Interrogation

Unlike the interrogation with Border Patrol, the government has submitted documentation that Defendant signed a *Miranda* waiver prior to being interrogated by ICE. Gov't Exs. 1 & 2. Defendant has not disputed the authenticity of the ICE *Miranda* waiver. Rather, he relies on the same conclusory argument that the fact that the CIS record lists defense counsel as Defendant's "Case Attorney" automatically invalidates the *Miranda* waiver. As explained above, this argument lacks merit. As Defendant has asserted no other facts suggesting that the ICE agents improperly coerced or tricked him into waiving his rights, or that he was unable to make a knowing and intelligent waiver, the Court finds that Defendant's second *Miranda* waiver was knowing, voluntary and intelligent.

### C. Voluntariness of Defendant's Confession

Finding that the waivers themselves were effective, the Court must assess the voluntariness of Defendant's confession "based on the totality of the circumstances, including the characteristics of the defendant and the details of the interrogation." *United States v. Roman-Zarate*, 115 F.3d 778, 783 (10th Cir. 1997) (internal citations omitted). Even after a suspect in custody has waived his *Miranda* rights, the circumstances surrounding his subsequent interrogation can rise to the level of coercion such that his ultimate confession is rendered involuntary. *See United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir. 2005) ("*Miranda* waivers are not themselves conclusive indicators of voluntariness."); *Perry v. Kemma*, 356 F.3d 880, 886 (8th Cir. 2004) (finding *Miranda* waiver valid and then proceeding to analyze whether subsequent police conduct rendered confession involuntary). Factors relevant to the determination of voluntariness include: "(1) the age, intelligence, and education of the defendant;

(2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment." *United States v. Toles*, 297 F.3d 959, 966 (10th Cir. 2002) (internal citations omitted).  The Court analyzes each factor separately, noting that no single factor is determinative.

Defendant has not provided his own version of the circumstances of either interrogation. Therefore, the Court must make this determination according to the government's briefs and the testimony of Agents Blum and Chavez.  Defendant has not challenged the government's assertions that Defendant is in his thirties, has a high school education, and has experience with the criminal justice system, all facts that suggest he was not unusually susceptible to coercion. *See Lugo*, 170 F.3d at 1004 (finding defendant "was not unusually susceptible to coercion based on age, intelligence and education" when he had received a ninth grade education in Mexico and spoke proficient English); *see also United States v. Morris*, 247 F.3d 1080, 1090 (10th Cir. 2001) (upholding district court's finding that nineteen-year-old defendant with a tenth grade education who had been arrested on five prior occasions possessed sufficient understanding and intelligence to voluntarily confess).

Although Defendant was detained for the entire day, he was not in handcuffs, and he was offered food and water at least once.  Moreover, the sequence of events demonstrates that Defendant spent only a small part of this period of detention undergoing actual interrogation from law enforcement officers.  Defendant was arrested around 9:00 a.m. and Border Patrol began interrogating him around noon.  As Agent Blum and Agent Chavez both testified that their respective interrogation sessions lasted roughly one hour, the Border Patrol session concluded at

around 1:00 p.m. Although the Court did not hear testimony regarding what time the ICE agents began their interrogation session, Defendant's indication on the ICE *Miranda* waiver form that he signed it at 5:22 p.m. indicates that roughly four hours passed between the two interrogations. This means that although Defendant was detained for the whole day and was not free to leave, he had a long break between the two interrogation sessions, strongly suggesting that he was not under such stress and pressure so as to render his confession involuntary. *See United States v. Brown*, 287 F.3d 965, 973-74 (10th Cir. 2002) (concluding that defendant's confession was voluntary despite fact he had been detained overnight at police station).

      Regarding the nature and length of the interrogation, Agent Blum testified that the Border Patrol session lasted approximately one hour. He testified that he and Agent Valenzuela were armed, and that although Agent Valenzuela's firearm was visible, neither agent touched his firearm during the interrogation. He also testified that the interrogation room was well-lighted and contained a large window made of two-way glass; the agents maintained a conversational tone; and neither agent threatened Defendant, physically touched Defendant, or employed any form of trickery or coercion. Agent Blum testified that Defendant did not appear confused, nor did he ask to take a break, cease the interrogation or speak to an attorney. Defendant has not disputed any of this testimony, and he has not asserted that any aspect of his characteristics would render his *Miranda* waiver involuntary.

      After hearing thorough and complete testimony from Agent Blum, the Court finds that the Border Patrol agents did nothing that would constitute "police overreaching." *See Connelly*, 479 U.S. at 170. Although Agent Valenzuela's firearm was visible during the interview, he never touched it or used it in any way. The mere visibility of the firearm does not create a

coercive environment. *See United States v. Chalan*, 812 F.2d 1302, 1308 (10th Cir. 1987) (finding environment of interview "not unduly coercive" despite fact that some officers were armed); *see also United States v. Drayton*, 536 U.S. 194, 204 (2002) (noting, in the Fourth Amendment context, that whether or not officer is visibly armed "should have little weight in the analysis" of voluntariness of a police encounter).

As detailed above, Defendant was advised of his constitutional rights prior to both interrogations. Finally, Defendant has not alleged that the agents employed physical punishment. In summary, the Border Patrol agents' conversational tone, the interrogation room's good lighting, and the short length of the interrogation all lead the Court to conclude that the circumstances were not coercive, and that Defendant's confession during the Border Patrol interrogation was voluntary.

The subsequent ICE interrogation took place in the same room at the Border Patrol station. A review of the testimony of Agent Blum and Agent Chavez demonstrates that the circumstances surrounding both interrogations were quite similar. Like the Border Patrol interrogation, ICE's questioning lasted approximately one hour. According to the uncontradicted testimony of Agent Chavez, neither he nor Agent Carroll engaged in any conduct that could amount to overreaching. Agent Chavez was armed but he believes his firearm was not visible; Agent Carroll was unarmed. The agents maintained a conversational tone. Agent Chavez asked Defendant if he was hungry or thirsty, to which Defendant replied that he was fine. Because these circumstances are no more coercive or threatening in nature than those surrounding the Border Patrol interrogation, the Court finds that Defendant's second confession was knowing, voluntary and intelligent.

## II.     Defendant's Sixth Amendment Claims

The Sixth Amendment right to counsel attaches at the commencement of adversarial judicial proceedings, after which the defendant has the right to have counsel present during all critical stages of the proceedings, including interrogation. *Rothgery v. Gillespie County*, 128 S. Ct. 2578, 2585-91 (2008). Adversarial judicial proceedings commence at the defendant's "first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Id*. at 2581. The Sixth Amendment is "offense specific," meaning that the attachment of the right to counsel with respect to one criminal proceeding has no bearing on the right to counsel concerning a subsequent and unrelated criminal investigation or proceeding. *McNeill v. Wisconsin*, 501 U.S. 171, 175 (1991). The Sixth Amendment right to counsel has not attached when "no charges have been filed regarding the subject of interrogation." *United States v. Mitcheltree*, 940 F.2d 1329, 1339 (10th Cir.1991) (citing *Illinois v. Perkins*, 496 U.S. 292 (1990)).

Defendant argues that his statements should be suppressed because they were elicited in violation of the Sixth Amendment's right for an accused to enjoy the assistance of counsel in his defense. The government argues that Defendant's Sixth Amendment argument is without merit, because at the time of Defendant's arrest and subsequent interrogations, his right to counsel had not attached.

Because the Sixth Amendment is offense specific, "[i]t cannot be invoked once for all future prosecutions," *McNeil*, 501 U.S. at 175, and the fact that Defendant had an attorney at some point prior to his arrest and subsequent interrogation for the instant offense is irrelevant. Defendant was arrested for the instant offense on November 23, 2008 and both the Border Patrol

and ICE interrogation sessions occurred later that day.  The Complaint [Doc. 1] was filed on November 25, 2008, marking Defendant's "first appearance before a judicial officer." *Rothgery*, 128 S. Ct. at 2581.  Indeed, Defendant does not dispute the fact that the interrogations occurred immediately following his arrest, foreclosing the possibility that adversarial judicial proceedings commenced prior to either interrogation.  Accordingly, Defendant's Sixth Amendment right to counsel had not attached, and neither the Border Patrol nor the ICE interrogation implicated this right.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Involuntary Statements [Doc. 55] is **DENIED**.

DATED: December 18, 2009.

_____
MARTHA VAZQUEZ
CHIEF U.S. DISTRICT COURT JUDGE